**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**URIAH J. SORENSEN,**

                **Plaintiff,**            **3:06-cv-554**
                                         **(GLS)**

        **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                **Defendant.**
_____

**APPEARANCES:**                **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Hinman, Howard Law Firm        EUGENE D. FAUGHNAN, ESQ.
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

**FOR THE DEFENDANT:**
HON. ANDREW BAXTER        KARLA J. GWINN
United States Attorney         Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

BARBARA L. SPIVAK
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**District Court Judge**
             **<u>MEMORANDUM-DECISION AND ORDER</u>**

## I. <u>Introduction</u>

Plaintiff Uriah Sorensen challenges the Commissioner of Social Security's denial of disability insurance benefits (DIB) and seeks judicial review under 42 U.S.C. § 405(g).  (*See* Compl., Dkt. No. 1.)  Upon reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision.

## II. <u>Background</u>

On March 3, 2003, Sorensen filed an application for DIB under the Social Security Act (SSA), alleging disability caused by thoracic and cervical disk disease beginning on January 28, 2003.  (Tr.[1] at 25, 61-63; *see also* Pl. Br. at 3, Dkt. No. 6.)  After his application was denied, Sorensen requested a hearing before an Administrative Law Judge (ALJ), which was held on April 29, 2004.  (Tr. at 25, 41.)  On June 14, 2004, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review.  (Tr. at 4-6, 22-31.)

Sorensen commenced the present action by filing a complaint on

_____

[1]"(Tr.  )" refers to the page of the Administrative Transcript in this case.

May 5, 2006, seeking review of the Commissioner's determination. (Dkt. No. 1.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 4, 5.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 6, 8.)

## III. **Contentions**

Sorensen contends that the Commissioner's decision is not supported by substantial evidence or the appropriate legal standards. Specifically, Sorensen claims that the ALJ: (1) failed to follow the treating physician rule; (2) failed to make a credibility determination and thereby improperly discounted Sorensen's allegations of pain; (3) improperly assessed Sorensen's residual functional capacity (RFC); and (4) failed to sustain her burden under the fifth step of the SSA guidelines' five-step analysis by posing incomplete hypothetical questions to the vocational expert. (*See generally* Pl. Br., Dkt. No. 6.) The Commissioner counters that substantial evidence supports the ALJ's decision.

## IV. **Facts**

The evidence in this case is undisputed and the court adopts the parties' factual recitations. (*See* Pl. Br. at 3-11, Dkt. No. 6; Def. Br. at 1, Dkt. No. 8.)

3

## V.  Discussion

### A.  Standard of Review

The standard for reviewing the Commissioner's final decision under

42 U.S.C. 405(g) is well established and will not be repeated here.  For a

full discussion of the standard, the court refers the parties to its previous

opinion in *Christiana v. Comm'r Soc. Sec. Admin.*, No. 1:05-CV-932, 2008

WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

### B.  Five-Step Disability Determination

A plaintiff seeking disability benefits is disabled under the SSA if he

can establish an "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months ...."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner uses a five-step process for determining whether

a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The Second Circuit has outlined this process:

> [I]f the commissioner determines (1) that the claimant is not
> working, (2) that he has a 'severe impairment,' (3) that the
> impairment is not one listed in Appendix 1 of the regulations

4

> that conclusively requires a determination of disability, and (4)
> that the claimant is not capable of continuing in his prior type of
> work, the Commissioner must find him disabled if (5) there is
> not another type of work the claimant can do.

*See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (citations omitted).  The first step under this process requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, he is not considered disabled.  However, if he is not engaged in substantial gainful activity, step two requires the ALJ to determine whether the claimant has a severe impairment.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from a severe impairment, step three requires the ALJ to determine whether the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his impairment meets or equals a listed impairment.  *See Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).  If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's RFC prevents him from performing past relevant work.  *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). At step five, the ALJ must determine whether the claimant

can do any other work.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

"The claimant bears the burden of proof on the first four steps, while the [Commissioner] bears the burden on the last step."  *See Green-Younger*, 335 F.3d at 106 (citation omitted).  In other words, once the claimant has met his burden, the ALJ can deny benefits only by showing, with specific reference to medical evidence, that the claimant can perform some less demanding work.  *See White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990); *see also Ferraris*, 728 F.2d at 584. In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills, to determine if he can perform other work existing in the national economy.[2]  *See* 20 C.F.R. §§ 404.1520(g), 404.1560, 416.920(g); *see also Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004).

## C.   <u>Analysis</u>

## 1.   **Treating Physician Rule**

Sorensen argues that the ALJ failed to afford appropriate weight to

---

[2]A claimant's impairment must be so severe as to prevent him from engaging in any kind of substantial gainful work which exists in the national economy "regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

6

the opinion of his treating physician, Dr. David Kammerman.  (*See* Pl. Br. at 11-14, Dkt. No. 6.)  Specifically, Sorensen claims that "Dr. Kammerman's opinion regarding ... disability and RFC should have been afforded controlling weight."  (Pl. Br. at 13, Dkt. No. 13.)  This argument is without merit.

Generally, the opinion of a treating physician is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998).  An ALJ may not arbitrarily substitute his own judgment for a competent medical opinion.  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  Where controlling weight is not given to the treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the opinion, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination by the treating physician for the conditions in question; (3) the medical evidence and explanations provided in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the qualifications of the treating physician; and

(6) other relevant factors tending to support or contradict the opinion.  *See*

20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

The "ultimate finding of whether a claimant is disabled and cannot

work [is] reserved to the Commissioner."  *Snell v. Apfel*, 177 F.3d 128, 133

(2d Cir. 1999) (internal quotation marks and citation omitted); *see also* 20

C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  "[T]he Social Security

Administration considers the data that physicians provide but draws its own

conclusions ...."  *Snell*, 177 F.3d at 133.   Thus, a treating physician's

disability assessment is not determinative.  *See id.*  Where the evidence of

record includes medical source opinions that are inconsistent with other

evidence or are internally inconsistent, the ALJ must weigh all of the

evidence and make a disability determination based on the totality of that

evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Sorensen's claim that the ALJ gave his treating physician "little

weight" is inaccurate.  (Pl. Br. at 13, Dkt. No. 6).  While the ALJ did not

expressly afford Dr. Kammerman's opinion controlling weight, it is clear that

the ALJ could not have reached most of her conclusions without substantial

reliance on Dr. Kammerman's opinions and observations.  The ALJ's

determination at step two that Sorensen suffered from a "severe"

8

impairment was expressly based on Dr. Kammerman's treatment notes, which evidenced Sorensen's ongoing complaints of neck and back pain. (Tr. at 27.) The ALJ's determination at step three that Sorensen was not presumptively disabled is fully consistent with Dr. Kammerman's observations and impressions. And Sorensen does not dispute that his impairments failed to meet a listed impairment in Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 416.920(d). (*See* Pl. Br. at 18.)

The majority of the ALJ's conclusions regarding Sorensen's RFC are fully supported by Dr. Kammerman's evaluations. The ALJ, consistent with Dr. Kammerman, found that Sorensen could not: lift over ten pounds; reach above shoulder height; do repetitive cervical twisting movements; climb; work at unprotected heights or around dangerous machinery; or frequently handle objects. (Tr. at 27, 231, 273-274, 283.) Further, the ALJ expressly relied on Dr. Kammerman's notes describing Sorensen's limited ability to bend, crawl, kneel, and twist. (Tr. at 28, 231, 293.)

The lone area where the ALJ afforded "limited weight" to Dr. Kammerman's opinion was regarding Sorensen's ability to work an eight-hour day. (Tr. at 28.) The ALJ explained that, contrary to Dr. Kammerman's opinion, "the objective findings indicate that [Sorensen]

9

could perform at least sedentary work [over the course of an eight-hour day]." (Tr. at 28.)  As demonstrated below, this decision was supported by substantial evidence and was appropriate under the SSA regulations.

First, Dr. Kammerman's treatment notes reveal some internal inconsistencies.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  In April 2003, Dr. Kammerman was "hopeful that at some point [Sorensen] might be able to do something sedentary."  (Tr. at 233.)  The following month, Dr. Kammerman reported that Sorensen was able to lift and carry fifteen pounds, push and pull forty pounds, sit less than six hours, and stand less than two hours per day.  (Tr. at 231.)  As the Commissioner points out, these opinions are "essentially the equivalent of the ALJ's RFC determination."  (Def. Br. at 8, Dkt. No. 8.)  Despite these earlier opinions, Dr. Kammerman opined in October 2003 that Sorensen could only sit for twenty minutes uninterrupted, sit three hours out of an eight-hour workday, stand for fifteen minutes without interruption, and stand for one hour per eight-hour workday.  (Tr. at 273.)  And in December 2003, Dr. Kammerman suggested that Sorensen's combined narcotic use and chronic pain "makes him unable to work."  (Tr. at 277.)  These newer conclusions were not accompanied by any objective findings that Sorensen's condition

10

deteriorated during this period of observation.

Second, it is unclear from Dr. Kammerman's notes whether his belief that Sorensen cannot work was based on Sorensen's impairments or whether it was based on other factors such as Sorensen's weight problems or educational background.  For instance, Dr. Kammerman's notes suggest that Sorensen's "massive truncal obesity" is preventing him from engaging in work activity.  (Tr. at 240, 285.)  And in January 2003, Dr. Kammerman opined that Sorensen "doesn't have any education background that would enable him to do sedentary work ...."  (Tr. at 238.)

Third, Dr. Kammerman's opinion regarding Sorensen's inability to perform sedentary work was not supported by the record clinical evidence. X-rays taken in 2000 and 2001 of Sorensen's cervical spine revealed normal curvature and alignment, minimal growth at the C4-C5 uncovertebral joints, and no evidence of fracture, subluxation, dislocation, neural foraminal narrowing, disk space narrowing, prevertebral soft tissue swelling, or instability between flexion and extension.  (Tr. at 112, 131-32, 190, 219.)  X-rays taken in 2001 of Sorensen's thoracic spine revealed no fracture, dislocation, or disk space narrowing, and slight wedging at the T11 vertebral level.  (Tr. at 189.)

11

A multiplanar magnetic resonance imaging (MRI) of Sorensen's cervical spine on December 6, 2001, revealed a T8-T9 disc bulge and a small left T7-T8 disc herniation, each without neural compression, and suggested that the T7 nerve root might be affected by a left T6-T7 disc herniation.  (Tr. at 129-30.)  A subsequent MRI on September 26, 2002, revealed a small left paramedian C6-C7 protrusion, a small right T1-T2 protrusion, but showed no root compression or impact upon the spinal cord and adjacent nerve roots at any level of the vertebral column.  (Tr. at 128.) CT scans were taken of Sorensen's cervical and thoracic spines on October 11, 2002.  (Tr. at 123-25.)  The cervical spine scan displayed a small left C5-C6 herniation without any neural compression and some bony spurring into the spinal canal at the C6-C7 level that did not affect the spinal cord or cause any neural compression.  (Tr. at 123.)  The thoracic spine scan revealed, among several mild bony spurs, a large calcified disc herniation at the T5-T6 level with a probable T6 radiculopathy, and a smaller calcified disc herniation at the T7 location.  (Tr. at 125.)  A cervical myelography displayed no neural compression or impact on the spinal cord and adjacent nerve roots.  (Tr. at 126.)

Fourth, Dr. Kammerman's opinion regarding Sorensen's ability to

12

work an eight-hour day and perform sedentary work is contradicted by the medical opinions of other treating and examining physicians.  Dr. Stephen Lebduska examined Sorensen in May 2002.  (Tr. at 113-21.)  Upon review of Sorensen's medical records, Dr. Lebduska recommended, among other things, that Sorensen should avoid any occupation that requires lifting objects exceeding fifty pounds, but noted that "the prognosis for overall recovery remains good."  (Tr. at 121.)

　　Dr. Claudio Reader examined Sorensen in April 2003.  (Tr. at 228.)  Dr. Reader observed that Sorensen had a normal gait, was able to rise from a chair and walk on his heels and toes without difficulty, and needed no help walking, changing clothes, or getting on and off the examination table.  (Tr. at 227.)  With regards to Sorensen's cervical spine, Dr. Reader found full flexion, full lateral flexion, full rotary movement on both sides, limited extension, and no cervical or paracervical pain or spasm.  (Tr. at 227.)  With regards to Sorensen's thoracic and lumbar spines, Dr. Reader found full flexion and extension, full lateral flexion, full ability to perform the straight leg raise test, full rotary movements on both sides, but noted that rotary movement was accompanied by pain.  (Tr. at 227-28.)  Ultimately, Dr. Reader opined that Sorensen "has mild limitations with prolonged

sitting, standing, walking and carrying heavy objects." (Tr. at 228.)

Dr. Sury Putcha, a state agency review physician, reviewed Sorensen's medical records on June 2, 2003, and concluded, *inter alia*, that Sorensen "retains an RFC for medium work, [and] therefore, he can return to past work." (Tr. at 259-264.) Ultimately, though, the ALJ gave Dr. Putcha's opinion "limited weight" because it was made without "more recent records" evidencing Sorensen's restricted abilities. (Tr. at 28.)

Dr. Khalid Sethi examined Sorensen three times between September and October 2002. (Tr. at 136-143.) In September 2002, Dr. Sethi found that Sorensen was fully able to perform the straight leg raise test, that his strength was "good" minus some "giveaway weakness" in his right arm and shoulder, that reflexes in his arms and legs were "equal and symmetric," and that muscle bulk and tone were normal. (Tr. at 142.) These findings were mirrored in both Dr. Sethi's October 3, 2002 examination, (Tr. at 139-40), and Dr. John Gartman's November 14, 2002 examination, (Tr. at 134-35). On October 23, 2002, Dr. Sethi found Sorensen's strength and reflexes diminished, and suggested surgical decompression at the C6-C7 cervical level. (Tr. at 136-38.) However, Dr. Gartman subsequently found no signs of weakness in any groups and no evidence suggesting

14

radiculopathy, myelopathy, or any other compression of the thoracic or cervical cords and nerves.  (Tr. at 134.)

Therefore, as a result of the disparities in the record, the ALJ was required to weigh all of the evidence and make a determination based on the totality of that evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Accordingly, the ALJ found Dr. Kammerman's opinion that Sorensen could not perform sedentary work in an eight-hour workday was not supported by the objective clinical medical evidence, the opinions of other treating physicians, or his own treatment notes.  The court will not second guess this well-founded assessment.

## 2.    Credibility Determination

Sorensen next contends that the ALJ improperly discounted his subjective allegations and complaints of disabling pain without making an express credibility determination explaining the reasons for discrediting his testimony.  (*See* Pl. Br. at 14-16, Dkt. No. 6.)  This claim is unfounded.

A plaintiff may suffer some degree of pain as a result of a condition. However, "some pain" does not automatically translate into disabling pain. *See Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).  "An individual's statement as to pain or other symptoms shall not alone be

conclusive evidence of disability ...."  *See* 42 U.S.C. § 423(d)(5)(A).  The

Commissioner is obligated to evaluate all of a claimant's symptoms,

"including pain, and the extent to which [those] symptoms can reasonably

be accepted as consistent with the objective medical evidence and other

evidence."  20 C.F.R. §§ 404.1529(a), 416.929(a).

The ALJ must first evaluate the objective medical evidence to

determine whether the claimant's impairments "could reasonably be

expected to produce the pain or other symptoms alleged ...."  20 C.F.R. §§

404.1529(a), 416.929(a); *see also Marcus v. Califano*, 615 F.2d 23, 27 (2d

Cir. 1979).  "Second, if the medical evidence alone establishes the

existence of such impairments, then the ALJ need only evaluate the

intensity, persistence, and limiting effects of a claimant's symptoms to

determine the extent to which it limits the claimant's capacity to work."

*Crouch v. Comm'r, Soc. Sec. Admin.*, 6:01-CV-0899, 2003 WL 22145644,

at *10 (N.D.N.Y. Sept. 11, 2003) (citing 20 C.F.R. §§ 404.1529(c),

416.929(c)).  But, if the alleged symptoms suggest that the impairment is

greater than demonstrated by objective medical evidence, the ALJ will

consider other factors relevant to the claimant's symptoms.  *See* 20 C.F.R.

§§ 404.1529(c)(3), 416.929(c)(3); *see also* Social Security Ruling (SSR)

96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).  These factors

include, among other things, the claimant's daily activities; the location,

duration, frequency, and intensity of the pain; the type, dosage,

effectiveness, and side effects of medication; and other treatment received

or measures taken to relieve the pain.  *See* 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3).

Ultimately, "[t]he reasons for the credibility finding must be grounded

in the evidence and articulated in the determination or decision."  SSR 96-

7p, 1996 WL 374186, at *4.  Thus, "after weighing the objective medical

evidence in the record, the claimant's demeanor, and other indicia of

credibility," an ALJ may reject the claimant's subjective allegations of pain

as long as she sets forth "her reasons with sufficient specificity to enable

[the court] to decide whether the determination is supported by substantial

evidence."  *Lewis v. Apfel*, 62 F. Supp.2d 648, 651 (N.D.N.Y. 1999)

(internal quotation marks and citation omitted).

There is no dispute that Sorensen suffered neck and mid-back pain

resulting from his cervical and thoracic disc herniation.  (Tr. at 26-27.)  In

fact, the ALJ took Sorensen's pain into account in evaluating the severity of

his impairments.  (Tr. at 26.)  And while the ALJ did not give controlling

17

weight to Sorensen's allegations of disabling pain, she did consider

Sorensen's complaints of pain in assessing his RFC.  In assessing

Sorensen's symptoms and pain, the ALJ followed the appropriate

regulations, and substantial evidence supports finding Sorensen not

entirely credible.  *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Lewis*, 62

F. Supp.2d at 651.

First, the ALJ evaluated Sorensen's alleged pain in the context of the

record clinical evidence to determine whether his impairments "could

reasonably be expected to produce the pain or other symptoms alleged."

20 C.F.R. §§ 404.1529(a), 416.929(a).  The objective clinical evidence

does not support Sorensen's complaints of disabling pain.  Instead, as

discussed at length above, the clinical tests performed on Sorensen

generally revealed mild, non-disabling findings.[3]

Second, the ALJ's finding that Dr. Kammerman's opinions were

based on Sorensen's "subjective complaints rather than the objective

─────────────────

[3]These tests revealed a large disc herniation at the T5-T6 level, small disc herniations at the T7-T8 and C5-C6 levels, and some bony spurring and protrusions.  (Tr. at 123-26, 128-30.)  However, the myelography and CT scan of Sorensen's cervical spine displayed no neural compression or impact on the spinal cord and adjacent nerve roots.  (Tr. at 123-26, 128.)  The thoracic spine CT scan raised the possibility of, but did not reveal, any actual compression at the T6 situs.  (Tr. at 125.)  And the successive MRIs of Sorensen's cervical and thoracic spines revealed no conclusive neural compression or impact on the spinal cord and adjacent nerve roots at any level of the vertebral column.  (Tr. at 128-30.)

findings" was reinforced by the medical opinions in the record, including Dr.
Kammerman's own treatment notes, which consist primarily of Sorensen's
complaints.  (Tr. at 28, 233-57, 277-88.)  For instance, contrary to Dr.
Kammerman, Dr. Reader found Sorensen had no cervical or paracervical
pain and only experienced pain in his thoracic and lumbar spines when
making bilateral rotary movements.  (Tr. at 227-28.)  While Dr. Sethi
recommended surgical decompression at the C6-C7 level, which would
suggest neural compression, Dr. Gartman subsequently found no evidence
suggesting radiculopathy, myelopathy, or other compression of the thoracic
or cervical cords.  (Tr. at 134, 136-38.)  And in reviewing Sorensen's
medical records, Dr. Puchta concluded that Dr. Kammerman's opinion was
"not supported by objective medical evidence."  (Tr. at 263.)

Based on the fact that neither the objective clinical evidence or
medical opinions supported Sorensen's allegations of disabling pain, the
ALJ considered other factors relevant to the claimant's complained-of pain,
including Sorensen's daily activities, medication, and other pain-relieving
treatment.  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* SSR
96-7p, 1996 WL 374186, at *4.  The ALJ focused on Sorensen's ability to
take care of his children, take care of his personal needs with some help,

take care of his pets, go out to dinner, make sandwiches and microwave

meals, drive his children to school, operate a lawn tractor to mow the lawn,

use a computer, help his children with homework, and read.  (Tr. at 28,

303-06.)  In addition, the ALJ discussed Sorensen's narcotic pain

medication, oral steroids, and treatment received, which included massage

and physical therapy.  (Tr. at 27-28.)  She noted that the dosages for the

pain medication were stable according to Dr. Kammerman's notes, and that

despite the limitations allegedly caused by the medications' side effects,

Sorensen was able to perform the above daily activities.  (Tr. at 28.)

Taking the entire record into account, including the above factors, the

medical evidence in the record, and Sorensen's own testimony, the ALJ

expressly determined that Sorensen's "allegations as to limitations and

inability to work are not entirely credible, as his allegations are not

supported by the evidence of record as a whole."  (Tr. at 27, 299-306.)

Contrary to Sorensen's contentions, this credibility determination was

appropriate as a matter of law, and was supported by substantial evidence.

Moreover, as the Commissioner highlights, "although the evidence

indicates that [Sorensen] experienced some pain and limitation ... the

record shows that he was able to work for several years following his injury,

20

and controlled his pain with medication and treatment."  (Def. Br. at 17, Dkt.

No. 8.)  While Sorensen suffered some pain, a finding of disability under

the regulations requires more than a "mere inability to work without pain."

*Dumas*, 712 F.2d at 1552.  Consequently, the ALJ's finding that Sorensen

did not suffer from a disability based on his alleged pain and other

impairments was supported by substantial evidence.

### 3.    Residual Functional Capacity

While it is undisputed that the ALJ correctly determined that

Sorensen could not perform his past relevant work, Sorensen argues that

the ALJ improperly assessed his RFC at the fourth step and as a result

erroneously relied on that RFC determination at step five.  (*See* Pl. Br. at

17-20, Dkt. No. 6.)  This claim is without merit.

The Commissioner defines RFC as a claimant's "maximum remaining

ability to do sustained work activities in an ordinary work setting on a

regular and continuing basis ... 8 hours a day, for 5 days a week, or [on] an

equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A.

July 2, 1996) (emphasis omitted); *see also Melville v. Apfel*, 198 F.3d 45,

52 (2d Cir. 1999).  Accordingly, in assessing a claimant's RFC, the ALJ

"must include a discussion of the individual's abilities on that basis."  SSR

21

96-8p, 1996 WL 3714184, at *2.  The ALJ must consider all the relevant evidence in the record, including the claimant's physical abilities, mental abilities, and symptoms, pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *See generally* 20 C.F.R. § 404.1545; *see also Verginio v. Apfel*, No. 97-CV-456, 1998 WL 743706, at *3 (N.D.N.Y. Oct. 23, 1998).

In making an RFC assessment, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  SSR 96-8p, 1996 WL 374184, at *1, 3; *see also* 20 C.F.R. §§ 404.1545(b)-(d), 416.945(b)-(d).  The ALJ must establish "by substantial evidence each of the criteria of the physical requirements in the regulations."  *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (citation omitted).  The ALJ must specify which functions the claimant is able to perform and may not "simply mak[e] conclusory statements regarding [the claimant's] capacities."  *Id.*

Only after assessing the claimant's functional limitations and abilities may the ALJ categorize the RFC into exertional levels of work, e.g., "sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 1996 WL 374184, at *1.  Under the SSA regulations, "[s]edentary work requires the

22

ability to lift no more than ten pounds, to sit for extended periods of time, and to walk and stand occasionally." *Verginio*, 1998 WL 743706, at *3 (citing 20 C.F.R. §§ 404.1567(a), 416.967(a)).[4]

Here, the ALJ considered all the relevant record evidence in assessing Sorensen's RFC.  She explicitly considered Sorensen's abilities, limitations, symptoms, and pain, and the appurtenant medical opinions and evidence.  (Tr. at 27.)  On the basis of this information, which the court has discussed at length, the ALJ specifically outlined each function Sorensen could perform, which included: (1) lifting up to ten pounds; (2) standing or walking up to two hours per eight-hour workday; (3) no reaching above shoulder level; (4) no repetitive cervical twisting; (5) no climbing; (6) no working at unprotected heights; (7) no working around dangerous machinery; (8) no bending, stooping, crawling, or crouching; (9) occasional kneeling; and (10) no frequent handling.  (Tr. at 27.)  These findings are supported by the medical evidence in the record, including, for the most part, Dr. Kammerman's opinions and notes.

---

[4]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

Based on these abilities and limitations, the ALJ categorized Sorensen's RFC at the "sedentary" work level.  SSR 96-8p, 1996 WL 374184, at *1; *see also Verginio*, 1998 WL 743706, at *3.  This was an appropriate categorization under 20 C.F.R. §§ 404.1567(a) and 416.967(a). Therefore, the ALJ's assessment and determination of Sorensen's RFC was supported by substantial evidence.

## 4.   Vocational Expert

Lastly, Sorensen contends that the ALJ failed to carry her burden at step five by presenting improper and incomplete hypothetical questions to the vocational expert, and by relying on the answers to those questions. (*See* Pl. Br. at 20-23, Dkt. No. 6.)  However, because the ALJ's RFC assessment was supported by substantial evidence, it was appropriate for her to rely on that RFC assessment in questioning the vocational expert.

At the fifth and final step of the sequential analysis, the burden shifts to the ALJ to determine whether the claimant can do any other, less demanding work existing in the national economy.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(g), 416.920(g); *see also White*, 910 F.2d at 65.  In making this determination, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *See* 20

24

C.F.R. §§ 404.1520(g), 404.1560, 416.920(g); *see also Butts*, 388 F.3d at 381.  Additionally, the ALJ may rely on a vocational expert's testimony regarding the existence of jobs that the claimant can perform in the national economy.  *See Butts*, 388 F.3d at 384.

There must be "substantial record evidence to support the [hypothetical] upon which the vocational expert based his opinion." *Dumas*, 712 F.2d at 1554.  Accordingly, "[a] hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony."  *Dickson v. Astrue*, No. 1:06-CV-511, 2008 WL 4287389, at *15 (N.D.N.Y. Sept. 17, 2008) (citing, *inter alia*, *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir.1984)).  Thus, where the ALJ's hypothetical question leaves out any of the claimant's impairments or limitations, "a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability."  *Id.* at *15 (citation omitted).

In questioning the vocational expert here, the ALJ's hypotheticals accurately reflected her RFC assessment of Sorensen.  While the ALJ posed questions about individuals performing at both "light" and "sedentary" exertional levels, the specific abilities and limitations relied on

in the questions were consistent with the ALJ's ultimate function-by-function findings.  (*Compare* Tr. at 310-315, *with* Tr. at 30.)  And as a result, the vocational expert provided a detailed description of positions in the national and local economies that fully corresponded with the sedentary, unskilled occupational base.  (Tr. at 314.)

While Sorensen contends that the ALJ did not present the full extent of his impairments in examining the vocational expert, the opposite is actually true.  The ALJ's questions not only covered the full extent of Sorensen's limitations and capabilities, but also covered impairments alleged by Sorensen which were contradicted by substantial record evidence.  (Tr. at 310, 314-15.)  Accordingly, the hypothetical questions provided a sound basis for the vocational expert's testimony.  See *Dickson*, 2008 WL 4287389, at *15.  Therefore, the vocational expert's responses constituted substantial evidence upon which the ALJ could rely in finding there are a significant number of jobs in the national economy that Sorensen could perform.  *See id.*

## VI.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and

Sorensen's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

Albany, New York
January 7, 2010

United States District Court Judge

27